Jahan C. Sagafi (SBN 224887)
jsagafi@outtengolden.com
Relic Sun (SBN 306701)
rsun@outtengolden.com
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Christopher McNerney (*pro hac vice* application
forthcoming)
cmcnerney@outtengolden.com
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (347) 390-2183

Elisa Della-Piana (SBN 226462)
edellapiana@lccr.com
Keith Wurster (SBN 198918)
kwurster@lccr.com
**LAWYERS' COMMITTEE FOR CIVIL RIGHTS
OF THE SAN FRANCISCO BAY AREA**
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone:  (415) 543-9444
Facsimile:  (415) 543-0296

*Attorneys for Plaintiffs and proposed Class Members*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| PETER LEE and LATONYA CAMPBELL, on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>     vs.<br><br>THE HERTZ CORPORATION, and DOLLAR THRIFTY AUTOMOTIVE GROUP,<br><br>          Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF TITLE VII**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Peter Lee and Latonya Campbell ("Plaintiffs"), individually and on behalf of themselves and all others similarly situated, by their attorneys, bring the following allegations against Defendants Hertz Corporation and Dollar Thrifty Automotive Group, Inc. (collectively, "Hertz" or "Defendants"):

## INTRODUCTION

1.      Hertz, one of the largest rental car companies in the United States, has used and continues to use a job applicant screening process that systematically rejects hundreds or thousands of qualified African Americans and Latinos from job opportunities based on their race or national origin.  Specifically, Hertz asks applicants for information about their past interactions with law enforcement and the criminal justice system and uses that information to make hiring decisions, despite the fact that the information is not job-related.  This practice imports the gross racial disparities from the criminal justice system into the employment context by using discriminatory outcomes from the criminal justice system as bases for making hiring decisions, despite the fact that those discriminatory outcomes are not relevant to the hiring decisions being made.  This practice is unlawful under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*. ("Title VII").

2.      Plaintiffs sought employment at Hertz, were qualified for the jobs for which they applied, and received offers of employment from Hertz.  But Hertz then withdrew the Plaintiffs' job offers due to their past criminal history.

3.      The jobs at issue in this case are nonexempt, lower-level positions.  They include jobs such as counter sales representatives, utility workers, vehicle service attendants, and other positions.  Such jobs could be a source of stable employment for many individuals who lack formal education or technical job skills and who are trying to get their lives back on track after some interaction with the criminal justice system.  Such stable employment has proven to be critically important in overcoming the gravitational pull of recidivism.

4.      Hertz's hiring practices and procedures are unlawful under Title VII because they have a significant adverse impact upon African Americans and Latinos (who, because of systemic

1

discrimination in the criminal justice system are arrested and incarcerated at rates substantially higher than whites), and because these practices (1) are neither job-related nor consistent with business necessity and (2) constitute an invalid screening device, rendering them improper under Title VII.

5. Through this lawsuit, Plaintiffs will show that the conduct outlined in their Complaint constitutes unlawful racial discrimination and clearly violates the stated public policy the Unites States to remove barriers to employment for hundreds of persons who have paid the penalties for any crimes they may have committed.

## CLASS DEFINITION

6. Plaintiffs bring this case as a class action under Federal Rules of Civil Procedure 23(a) and (b), on behalf of the following class:

> All African American and Latino applicants for employment in a nonexempt position at a U.S.-based retail Hertz location ("Hertz Stores Job"), who, from November 9, 2013, through the resolution of this action, were denied employment in a Hertz Stores Job based on based in whole or in part on Hertz's policy and practice of denying employment to individuals with criminal histories ("the Class").

## JURISDICTION AND VENUE

7. The court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(4), as this claim arises under the laws of the United States, and under § 717 of Title VII, 42 U.S.C. § 2000e *et seq*.

8. Venue is proper in this district pursuant to 42 U.S.C. § 2000e-5(f)(3), because Plaintiffs reside within this district. Additionally, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Hertz conducts business within this district.

9. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

10. Intradistrict assignment: Pursuant to N.D. Cal. Local Rules 3-2(c) and (d), intradistrict assignment to the San Francisco Division is proper because a substantial part of the events which give rise to the claims asserted herein occurred in San Francisco County.

2

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF TITLE VII

**EXHAUSTION OF ADMINSTRATIVE REQUIREMENTS**

11. On September 5, 2014, Plaintiff Peter Lee filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") San Francisco office based on Hertz's denial of employment to him.

12. On April 3, 2015, Plaintiff Latonya Campbell also filed a Charge of Discrimination with the EEOC San Francisco office based on Hertz's denial of employment to her.

13. On September 14, 2018, the EEOC issued Plaintiffs Lee and Campbell Notices of Right to Sue.

14. This Complaint is being filed within ninety days of the Notice of Right to Sue.

15. All prerequisites to the filing of this lawsuit, including exhaustion of administrative remedies, have been met.

**PARTIES**

**Plaintiffs**

***Peter Lee***

16. Plaintiff Peter Lee is an African American man who lives in Richmond, California.

17. In May 2014, Hertz recruited Mr. Lee to interview for a counter sales representative position with Hertz at its Dollar/Thrifty-branded car rental location at the San Francisco International Airport.

18. At that time, Mr. Lee was employed in a similar position with a competing company.

19. Mr. Lee applied and interviewed for the position of counter sales representative with Hertz's Dollar/Thrifty-branched rental car location at the San Francisco International Airport.

20. Mr. Lee was qualified for the position based on the job description and his prior experience.

21. Mr. Lee interviewed for the position with Hertz sometime in the first half of May 2014.

22. At the close of the interview, Mr. Lee was given an offer of employment, pending the processing of his application materials.

3

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF TITLE VII

23. To begin this process, a Hertz representative instructed Mr. Lee to complete an online application, and Mr. Lee completed the online application as instructed.

24. The online application contained a section disclosing Hertz's intention to run a criminal background check.

25. On May 15, 2014, Mr. Lee received an email from Kimberly Kowallis, a field recruiter for Hertz, confirming his conditional offer of employment.

26. On May 27, 2014, after Mr. Lee had passed Hertz's mandatory drug screening, he received an email from Ms. Kowallis with the subject line "Hertz Orientation Package." This email provided information about Mr. Lee's onboarding with Hertz.

27. Ms. Kowallis subsequently scheduled Mr. Lee to begin working for Hertz on June 9, 2014. After receiving confirmation of his start date with Hertz, Mr. Lee provided a notice of resignation, effective June 9, 2014, to his then-current employer.

28. At some point during the processing of Mr. Lee's application, Hertz obtained one or more consumer reports from Sterling Infosystems, Inc. ("Sterling"), a consumer reporting agency, containing information about Mr. Lee's background, including information about pending criminal charges against Mr. Lee for which he had not been convicted.

29. This consumer report indicated that Mr. Lee was once arrested with pending charges but did not indicate any convictions.

30. On June 3, 2014, Mr. Lee received a call from Ms. Kowallis informing him that Hertz would not hire him because of the criminal history information contained in his background check.

31. Ms. Kowallis told Mr. Lee that she could not do anything about his rejection because the decision was based on "Hertz policy."

32. Mr. Lee asked Ms. Kowallis for a copy of the background check information that Hertz had obtained and was instructed to contact Sterling.

4

33.     Later that same day, Mr. Lee received an email from Ms. Kowallis confirming that Hertz had, indeed, rescinded his job offer because he did not meet the company's "background qualifications."

34.     As a result, Hertz stopped the onboarding process, and did not move forward with the job that it had offered Mr. Lee.

35.     Then, on June 3, 2014, Mr. Lee contacted Sterling by phone and requested a copy of the consumer report that Sterling provided to Hertz in connection with Mr. Lee's application for employment.

36.     In response, sometime on or after June 3, 2014, Sterling sent Mr. Lee by regular mail a copy of a consumer report prepared by Sterling (the "June 3rd Package").

37.     Mr. Lee did not receive a copy the June 3rd Package until sometime after June 3, 2014.

38.     Sometime on or after June 4, 2014, Sterling sent to Mr. Lee by regular mail an undated letter, inaccurately entitled "Pre-Adverse Action Notice," which bore the Hertz corporate logo (the "June 4th Letter").  Enclosed with the June 4th Letter was a copy of a consumer report prepared by Sterling dated June 4, 2014.

39.     Mr. Lee did not receive the June 4th Letter until sometime after June 4, 2014.

40.     The June 4th Letter informed Mr. Lee that, based on a "Criminal Report" provided by Sterling, Hertz was considering revoking Mr. Lee's conditional offer of employment, subject to Mr. Lee successfully challenging the criminal report information.

41.     At the time that Sterling mailed Mr. Lee the June 3rd Package and the June 4th Letter (as well as at the time Mr. Lee received them), however, Hertz had already revoked Mr. Lee's conditional offer of employment based upon information contained in Mr. Lee's consumer report, provided to Hertz by Sterling.

42.     Mr. Lee's criminal history was not relevant to the position for which he applied for reasons including the circumstances of his arrest, the nature of the crimes charged, and the fact that he had not been convicted of any crime.

5

***Latonya Campbell***

43.     Plaintiff Latonya Campbell is an African American woman who lives in San Francisco, California.

44.     Sometime in the last week of April 2014, Ms. Campbell went in person to apply for a counter sales position at the Dollar/Thrifty-branded car rental location owned by Hertz on O'Farrell Street in San Francisco ("the O'Farrell Street location").

45.     Ms. Campbell was qualified for the position based on the job description and her prior work experience.

46.     Ms. Campbell spoke with a woman named Rosanna from Human Resources who told Ms. Campbell to fill out the Hertz online application.

47.     On or about April 30, 2014, Ms. Campbell completed an online application, which contained a section disclosing Hertz's intention to run a criminal background check, which was part of the overall job application

48.     During the week of May 5, 2014, Ms. Campbell interviewed at the O'Farrell Street location with a regional manager.

49.     After a week without word from Hertz, Ms. Campbell applied for and interviewed with another company.

50.     On or about May 19, 2014, Ms. Kowallis called Ms. Campbell and made a conditional offer of employment as an Instant Return Representative at the O'Farrell Street location.

51.     That same day, Ms. Kowallis sent Ms. Campbell an email confirming the offer, which was conditioned on passing a mandatory drug test and criminal background check.

52.     Around the same time that she received Hertz's conditional offer of employment, Ms. Campbell was offered a second interview with the other company, which she declined because of the Hertz offer.

53.     Shortly thereafter, Ms. Campbell successfully passed the drug test and filled out online forms sent by Sterling requesting information about her previous employment history.

6

54. At some point during the processing of Ms. Campbell's employment application, Hertz obtained from Sterling one or more consumer reports on Ms. Campbell that contained information regarding a misdemeanor conviction and reflected that she was on probation.

55. On or about June 2, 2014, Ms. Kowallis called and asked Ms. Campbell to start work at the O'Farrell Street location on June 9, 2014. Later that day, Ms. Campbell received an email from Ms. Kowallis with a "1st day paperwork" appointment reminder for June 9, 2014.

56. Sometime before June 4, 2014, Ms. Kowallis called and told Ms. Campbell that the legal department had been made aware of Ms. Campbell's misdemeanor conviction and stated that Hertz does not hire people with criminal convictions such as hers that, according Hertz's policy and categorization of convictions, involved violence.

57. Ms. Campbell responded that she had been the victim of domestic violence prior to, and at the time of, her conviction. Ms. Kowallis told Ms. Campbell to send her any evidence of Ms. Campbell's status as a domestic violence victim and that she would forward it to the legal department.

58. On or around June 4, 2014, and after Ms. Campbell's conversation with Ms. Kowallis, Ms. Campbell obtained and sent to Hertz two letters, one from her probation officer, Ms. Nakeisha Peacock, in the San Francisco Adult Probation Department, and one from the victim advocate in the San Francisco Office of the District Attorney, confirming that Ms. Campbell is a victim of domestic violence. Ms. Peacock stated in her letter that based on Ms. Campbell's excellent progress on probation, she would attempt to terminate Ms. Campbell's probation early and expunge her record.

59. On or about June 6, 2014, Ms. Kowallis cancelled the "1st day paperwork" appointment reminder she had previously set for June 9, 2014.

60. On or about June 10, 2014, Ms. Kowallis called and told Ms. Campbell that Hertz would not hire her. When Ms. Campbell asked why, Ms. Kowallis responded that Ms. Campbell was on probation and that it was against Hertz's policy to hire anyone on probation.

61. On June 10, 2014, Ms. Kowallis sent Ms. Campbell an email titled "Offer

7

Rescinded," stating that Hertz could not "continue to extend an offer of employment due to the following reason: PROBATION (CONCURRENT SENTENCE); SENTENCE LENGTH: 3 YEARS."

62.    Hertz rescinded its job offer to Ms. Campbell at least in part based on its policy of not hiring individuals convicted of what Hertz categorizes as a crime involving violence.

63.    Ms. Campbell's criminal history and status on probation were not relevant to the position for which she applied for reasons including the nature and circumstances of the misdemeanor and probation.

**Defendants**

***Hertz Corporation***

64.    Hertz Corporation operates the Hertz, Dollar, Thrifty, and Firefly car rental brands in more than 11,000 corporate and licensee locations in approximately 140 countries.  Hertz employs over 37,000 workers annually.

65.    Hertz Corporation is the largest worldwide airport general use car rental company with more than 1,700 airport locations in the United States.

66.    Hertz Corporation is registered as a Delaware corporation and maintains its headquarters at 8501 Williams Road, Estero, Florida, 33928.

67.    Hertz Corporation owns and operates the relevant Dollar/Thrifty-branded car rental offices located on O'Farrell Street in San Francisco, California, and at the San Francisco International Airport, 780 McDonnell Road, San Francisco, California, through its wholly-owned subsidiary, Dollar Thrifty Automotive Group, Inc.

68.    At all relevant times, Hertz has been an employer as defined by Title VII of the Civil Rights Act.

69.    Hertz, by soliciting, conducting, and transacting business in the state of California, engages in continuous, permanent, and substantial activity within the state.

***Dollar Thrifty Automotive Group***

70.    Dollar Thrifty Automotive Group, Inc. is wholly owned and operated by the Hertz

8

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF TITLE VII

Corporation.

71.    There are approximately 340 Dollar and Thrifty corporate locations in the United States and Canada.  Dollar Thrifty Automotive Group, Inc. employs over 5,900 workers annually.

72.    Dollar Thrifty Automotive Group, Inc. is a Delaware corporation and maintains its headquarters at 5330 E. 31st Street, Tulsa, Oklahoma.

73.    At all relevant times, Dollar Thrifty Automotive Group, Inc. has been an employer as defined by Title VII of the Civil Rights Act.

74.    Dollar Thrifty Automotive Group, Inc., by soliciting, conducting, and transacting business in the state of California, engages in continuous, permanent, and substantial activity within the state.

### STATEMENT OF CLAIMS

75.    At all times relevant to this Complaint, Hertz has had a *single, uniform* criminal background check procedure that is used for *all* job applicants.

76.    As part of that procedure Hertz maintains a series of categorical bans to employment for individuals with certain convictions or pending charges regardless of when they occurred and without distinguishing between felonies and misdemeanors ("Screening Policy").  Hertz's policy has no time restriction limit for this ban.

77.    For example, Hertz's Screening Policy disqualifies all applicants with any history of a conviction or a prosecution pending for a crime, felony or misdemeanor involving assault, violence, sale of controlled substances or theft.  Hertz's policy is unrelated to legitimate business necessity, and has significant detrimental real world impact on hundreds or thousands of African Americans and Latinos.

78.    Hertz's policy provides no time limit to disqualifying applicants based on prior criminal history regardless of the type of job sought by an applicant.  Hertz's blanket policy applies across all job categories.

79.    Hertz also denies employment to any individuals who fail to disclose their complete criminal histories ("Falsification Policy").

9

80.    Virtually all applicants for entry-level positions with Hertz are lay persons who likely do not know the full extent or import of their criminal history.  A person with a criminal conviction could incorrectly report the nature of his or her conviction for numerous reasons.  Particularly for an individual who is not incarcerated, it is not always clear whether the disposition of his or her charges resulted in a conviction (or its equivalent) or not.  Hertz's Falsification Policy is a significant bar to employment for applicants with criminal records.

81.    Hertz's Screening and Falsification Policies disqualified individuals who would be eligible for employment according to any valid and fair system.

82.    At all times relevant to this Complaint, African Americans and Latinos were arrested and convicted of crimes at more than double the rates of whites.[1]  As a result of Hertz's Screening and Falsification Policy, each component individually and collectively as described above, had and continues to have a significant and detrimental impact on them, based on their race and national origin, as compared to white applicants.

83.    African Americans are arrested and incarcerated for crimes at higher rates than Whites, relative to their share of the national population.[2]

84.    As of 2010, 40% of U.S. prisoners were African American, although African

---

[1] *See* United States Department of Justice. Office of Justice Programs. Bureau of Justice Statistics. National Prisoner Statistics, 1978-2014.

[2] *See* U.S. Department of Justice, Federal Bureau of Investigation, *Crime in the United States 2016*, Table 21A (Arrests by Race and Ethnicity), *available at* https://ucr.fbi.gov/crime-in-the-u.s/2016/crime-in-the-u.s.-2016/topic-pages/tables/table-21 (showing 26.9% of arrests are of Black or African American individuals, while 69.6% of arrests are of White individuals); U.S. Census Bureau, *Quick Facts, United States* (2017), *available at* https://www.census.gov/quickfacts/fact/table/US/PST045217 (showing Black or African American individuals make up approximately 13.4% and Whites make up 76.6% of the United States population).  *See also EEOC Enforcement Guidance on the Consideration of Arrest and Conviction Records in Employment Decisions Under Title VII of the Civil Rights Act of 1964* (*"EEOC Guidance"*), available at https://www.eeoc.gov/laws/guidance/arrest_conviction.cfm, at 9-10 (April 25, 2012) (citing to national data that shows Blacks are arrested and convicted at higher rates than Whites).

10

Americans represented only 13% of the overall U.S. population.[3]  Projections based on recent trends in incarceration estimate that one out of every three African American males born today will go to prison, compared to just one out of every seventeen White males.[4]

85.    As the EEOC has expressly found, the disproportionate arrest and conviction of African Americans "supports a finding that criminal record exclusions have a disparate impact based on race and national origin." *EEOC Guidance*, at 9-10.

86.    Compounding the racial disparities in criminal arrests and convictions is proven employer bias against people with criminal records.  For example, audit studies conducted by researchers at Harvard and Princeton Universities found that African Americans with criminal records were particularly disadvantaged in the job market when compared to Whites with criminal records.[5]

87.    Any selection device that has a disparate impact must have a "manifest relationship to the employment in question." *Griggs v. Duke Power Co.*, 401 U.S. 424, 432 (1971).  It must "be shown to be necessary to safe and efficient job performance to survive a Title VII challenge." *Dothard v. Rawlinson*, 433 U.S. 321, 331 n. 14 (1977).  A criminal record exclusion is valid only when it "operates to effectively link specific criminal conduct, and its dangers, with the risks inherent in the duties of a particular position." *EEOC Guidance*, at 14.

88.    Hertz cannot show business necessity with respect to its blanket exclusions found in its Screening Policy, nor can it show business necessity for excluding applicants pursuant to its Falsification Policy.

---

[3] Leah Sakala, *Breaking Down Mass Incarceration in the 2010 Census: State-by-State Incarceration Rates by Race/Ethnicity*, Prison Pol'y Initiative (May 28, 2014), http://www.prisonpolicy.org/reports/rates.html.

[4] Marc Mauer, *Addressing Racial Disparities in Incarceration*, 91 Prison J. 87S, 88S (2011), *available at* https://www.sentencingproject.org/wp-content/uploads/2016/01/Addressing-Racial-Disparities-in-Incarceration.pdf.

[5] Devah Pager et al., *Discrimination in a Low-Wage Labor Market: A Field Experiment*, 74 Am. Soc. Rev. 777, 785-86 (2009); Devah Pager et al., *Sequencing Disadvantage: Barriers to Employment Facing Young Black and White Men with Criminal Records*, 623 Annals Am. Acad. Pol. & Soc. Sci. 195, 199 (2009); Devah Pager, *The Mark of a Criminal Record*, 108 AM. J. SOC. 937, 955-61 (2003).

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF TITLE VII

89. Hertz's exclusions in its Screening Policy bear no relation to the employment in question—entry-level jobs like counter sales representatives, utility workers, vehicle service attendants, and other positions.

90. Having a conviction (whether disclosed or not) is not an accurate proxy for determining whether an applicant would be able to perform the duties of the job. There are no reliable studies or empirical data to suggest that applicants with criminal records are more likely to engage in terminable offenses.[6]

91. Hertz excluded many applicants from employment for various felony and misdemeanor convictions or pending charges involving assault, violence, sale of controlled substances or theft. Even the most petty offenses could lead to an applicant's exclusion if the applicant failed to disclose his or her conviction history to Hertz's satisfaction.

92. Hertz's Screening Policy is far too over-inclusive to meet the standards of job-relatedness and consistency with business necessity.

93. Hertz does not have a process or policy to determine whether individuals convicted of crimes many years ago had made positive changes in their lives such that they no longer posed a risk to others. Hertz lacked a systematized process to consider applicants' proof of rehabilitation, such as documentation of successful participation in drug treatment programs, educational achievements or relevant employment, or to submit certificates of relief from disabilities, which in many states create a presumption of rehabilitation.

94. As discussed above, the Screening Policy created significant barriers to employment that excluded many properly qualified persons, including disproportionate numbers of African American and Latino applicants. There are less discriminatory alternatives that would have better achieved any legitimate hiring interests.

95. Less discriminatory alternatives include, but are not limited to: (1) considering all applicants with a record of an arrest over one year old at the time of application and no record of

[6] *See, e.g.,* Ian B. Petersen, *Toward True Fair-Chance Hiring: Balancing Stakeholder Interests and Reality in Regulating Criminal Background Checks*, 94 Tex. L. Rev. 175, 187-88 (2015)

12

criminal conviction, as well as those applicants with juvenile adjudications or adult convictions that have been expunged or sealed; (2) considering all applicants with a record of conviction for a crime that by its nature does not pose a legitimate threat to the public safety or risk of workplace misconduct; (3) eliminating the practice of denying applicants based on discrepancies in their self-disclosure; and (4) giving each individual application that is marked for further review a meaningful opportunity to demonstrate that he or she does not present a current threat, including providing evidence of rehabilitation, an explanation of events leading to the conviction, or information regarding other mitigating factors.

## CLASS ACTION ALLEGATIONS

96. Plaintiffs bring this case as a proposed class action pursuant to Fed. R. Civ. P. 23 on behalf of themselves and the Class.

97. Plaintiffs bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and/or (c)(4) seeking liability-phase injunctive and declaratory relief.

98. Plaintiffs also bring this class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(3) and/or (c)(4) seeking backpay, monetary damages, and other make-whole relief.

99. Plaintiffs reserve the right to amend the definition of the Class based on discovery or legal developments.

100. Named Plaintiffs, and those similarly situated, are all members of the Class, which includes all African American and Latino applicants who sought employment with Hertz from November 9, 2013 through the present, and were denied employment based on application of Hertz's criminal background check policies.

101. The members of the Class are so numerous that joinder of all of them is impracticable. Hertz is a large retail employer with roughly 11,000 stores across the country, including many in California. The number of job applicants harmed by Hertz's violations of the law is far greater than feasibly could be addressed through joinder. The precise number is uniquely

13

within Hertz's possession, and Class Members may be notified of the pendency of this action by mailed and/or e-mailed notice.

102. There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members. Hertz has a *single, uniform* criminal background check procedure that is used for *all* job applicants. Common questions include, but are not limited to:

(1) Whether it was Hertz's policy and practice to exclude job applicants with criminal histories who should have been eligible for employment based on valid factors assessing legitimate threat to public safety or risk of workplace misconduct;

(2) Whether Hertz's policy and practice to exclude job applicants based on criminal history had a discriminatory disparate impact on African American and Latino applicants;

(3) Whether Hertz's policy and practice to exclude job applicants based on their criminal history records is job-related and consistent with business necessity;

(4) Whether there was a less discriminatory policy and practice that would have met Hertz's legitimate needs; and

(5) What equitable and injunctive relief for the Class is warranted.

103. Named Plaintiffs' claims are typical of the claims of the Class: (1) Each Plaintiff applied for a job with Hertz within the relevant time period; (2) Each was processed through the same application procedure; (3) Each was subjected to the same screening devices and hiring processes; (4) Each was denied the position; and (5) Each has the same discrimination claim based on disparate impact. All of these claims are shared by each and every Class Member.

104. Named Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class. Plaintiffs have no conflict with one another or any class member. Plaintiffs are committed to the goal of having Hertz revise its hiring policy and practice to eliminate its discriminatory impact on African American and Latino applicants.

105. Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

14

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF TITLE VII

106.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because Hertz has acted and/or refused to act on grounds generally applicable to the Class Members, making declaratory and injunctive relief appropriate with respect to Plaintiffs and the Class Members as a whole.  The Class Members are entitled to injunctive relief to end Defendant's common, uniform, unfair discriminatory – and illegal – policies and practices.

107.    Class certification is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members.  For example, Hertz has maintained a common policy of denying employment to individuals with certain criminal convictions, which Plaintiffs contend is discriminatory and unlawful.  A class action is superior to other available methods for the fair and efficient adjudication of this litigation.  Class Members have been damaged and are entitled to recovery as a result of Hertz's uniform policies and practices.  Because Hertz has maintained a common policy of denying employment to individuals with certain criminal convictions but may not have explained that policy to all Class Members, many Class Members may be unaware that their rights have been violated.

**CLAIM FOR RELIEF**
**Disparate Impact Discrimination**
**Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.***
**(Brought by Plaintiffs on Behalf of Themselves and the Class)**

108.    Plaintiffs incorporate by reference the allegations in all other paragraphs.

109.    Named Plaintiffs bring this claim on their own behalf and on behalf of the Class.

110.    Plaintiffs Lee and Campbell timely filed charges with the EEOC, with class wide allegations, and have thus exhausted their administrative remedies.

111.    Hertz's policy and practice of using employment screens that exclude applicants with criminal histories from obtaining employment opportunities, has harmed, and continues to harm, Plaintiffs, and constitutes unlawful discrimination on the basis of race and/or national origin in violation of 42 U.S.C. §§ 2000e *et seq.*

15

112.    Hertz's policy and practice of using employment screens that exclude applicants with criminal histories from obtaining employment opportunities has a disparate impact on African Americans and Latinos and is neither job related nor consistent with business necessity. Even if Hertz's policy and practice of denying employment opportunities based on applicants' criminal history records could be justified by business necessity, a less discriminatory alternative exists that would have equally served any legitimate purpose.

113.    Plaintiffs and the Class also seek injunctive and declaratory relief to correct Hertz's discriminatory policies and practices. Plaintiffs and the Class have no plain, adequate, or complete remedy at law to redress the wrongs alleged herein, and the injunctive relief sought in this action is the only means of securing complete and adequate relief. The practices identified above have been in place since at least 2010, and Hertz continues the alleged discriminatory hiring practices today. Plaintiffs and the Class they seek to represent are now suffering, and will continue to suffer, irreparable injury from Hertz's discriminatory acts and omissions.

114.    Hertz's conduct has caused, and continues to cause, Plaintiffs and the members of the Class substantial losses in earnings and other employment benefits.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class Members pray for relief as follows:

115.    Certification of the case as a class action on behalf of the proposed Class;

116.    Designation of Named Plaintiffs Peter Lee and Latonya Campbell as representatives on behalf of the Class;

117.    Designation of Plaintiffs' counsel of record as Class counsel;

118.    A declaratory judgment that the practices complained of herein are unlawful and violate Title VII;

119.    A preliminary and permanent injunction against Hertz and all officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the unlawful policies, practices, customs and usages set forth herein, consistent

16

with the less discriminatory alternative described above;

120.    An order that Hertz institute and carry out policies, practices, and programs that provide equal employment opportunities for all Class members who would be eligible under application of the Uniform Guidelines for Employee Selection Procedures and related EEOC Guidance, and that Hertz eradicate the effects of past and present unlawful employment practices;

121.    Restore Plaintiffs Peter Lee and Latonya Campbell and Class Members to their rightful positions at Hertz;

122.    Back pay accruing as a result of a delay in hiring Plaintiffs and Class Members caused by the illegal policies and practices alleged herein;

123.    Costs incurred herein, including reasonable attorneys' fees to the extent allowable by law, including but not limited to 42 U.S.C. §§ 2000e-5(k) & 2000e-16;

124.    Pre-judgment and post-judgment interest, as provided by law;

125.    Payment of a reasonable service award to Plaintiffs, in recognition of the services they have rendered and will continue to render to Class Members, and the risks they have taken and will take; and

126.    Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

**JURY DEMAND**

Plaintiffs hereby demand a jury trial to the extent authorized by law.

17

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF TITLE VII

Dated:  December 12, 2018

Respectfully submitted,

By:    /s/ *Jahan C. Sagafi*
        Jahan C. Sagafi

Jahan C. Sagafi (SBN 224887)
jsagafi@outtengolden.com
Relic Sun (SBN 306701)
rsun@outtengolden.com
**OUTTEN & GOLDEN LLP**
One California Street, 12th Floor
San Francisco, CA 94111
Telephone:  (415) 638-8800
Facsimile:  (415) 638-8810

Christopher McNerney
(*pro hac vice* application forthcoming)
cmcnerney@outtengolden.com
**OUTTEN & GOLDEN LLP**
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000
Facsimile: (347) 390-2183

Elisa Della-Piana (SBN 226462)
edellapiana@lccr.com
Keith Wurster (SBN 198918)
kwurster@lccr.com
**LAWYERS' COMMITTEE FOR CIVIL
RIGHTS OF THE SAN FRANCISCO BAY
AREA**
131 Steuart Street, Suite 400
San Francisco, CA 94105
Telephone:  (415) 543-9444
Facsimile:  (415) 543-0296

*Attorneys for Plaintiffs and proposed Class
Members*

18

CLASS ACTION COMPLAINT
FOR VIOLATIONS OF TITLE VII